UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA,                        08 Cr. 1244

        -against-
                                                 OPINION
PHILMOUR GAYLE, ET AL.,

            Defendants.
------------------------------------X


A P P E A R A N C E S:

    Attorney for the Government

    PREET BHARARA
    United States Attorney for the
        Southern District of New York
    One St. Andrew's Plaza
    New York, NY 10007
    By:   Christian R. Everdell, Esq.
          Christopher D. Frey, Esq.


    Attorneys for Defendant Philmour Gayle

    LAW OFFICES OF SCOTT B. TULMAN &
        ASSOCIATES, PLLC
    369 Lexington Avenue, 15th Floor
    New York, NY 10017
    By:   Scott B. Tulman, Esq.

1

**Sweet, D.J.**

Defendant Philmour Gayle ("Gayle" or the "Defendant") has moved to suppress evidence seized during a search of his residence on February 18, 2009, on the grounds that probable cause for the warrant was stale when the warrant was issued and the affidavit filed in support of the search warrant contained material omissions affecting the probable cause determination.

Upon the facts and conclusions set forth below, Gayle's motion is denied.

## I.   PRIOR PROCEEDINGS

On December 12, 2008, Gayle and six other individuals were indicted in the Southern District of New York. Count One of the indictment (the "Indictment") charges Gayle and others with conspiracy to import narcotics from Jamaica and distribute them in the United States between 2003 and 2008 in violation of 21 U.S.C. §§ 812, 841(a)(1), (b)(1)(A), and (b)(1)(B). Count Two charges Gayle and others with importing compounds containing cocaine into the United States from Jamaica in

violation of 21 U.S.C. §§ 812, 952, 960 (b)(1)(B) and (b)(2)(G).

The instant motion was heard and marked fully submitted on December 2, 2009.

## II. **FACTS**

The facts which follow are based upon the affidavits and exhibits submitted by the parties in connection with Defendant's motion.

According to the Indictment, Gayle and his co-conspirators smuggled narcotics in commercial airplanes departing Jamaica for the United States. The Indictment alleges that members of the conspiracy would stash multiple kilogram quantities of narcotics beneath the toilet of a commercial flight bound for the United States. After the flight landed in the United States and cleared customs, a co-conspirator would board the flight for the next leg of the plane's trip. While on that flight, the co-conspirator would walk to the bathroom, remove the hidden narcotics, and conceal them either on his or her person or in his or her carry-on baggage. Because the plane had already

cleared customs, the co-conspirator would not be searched upon exiting the plane with the narcotics. The co-conspirator would deliver the narcotics to other co-conspirators for distribution within the United States. Alternatively, members of the conspiracy would stash multiple kilogram quantities of narcotics in a cargo panel of a plane departing Jamaica for the United States. Upon the arrival of the plane, Gayle (who was employed as a ramp worker for Continental Airlines) and others employed by the Newark International Airport removed the narcotics from the plane for further distribution within the United States.

On February 18, 2009, Special Agent Daniel Herbst ("Agent Herbst") of the Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("ICE"), submitted an affidavit (the "Warrant Affidavit") to the Honorable Esther Salas, United States Magistrate Judge for the United States District Court for the District of New Jersey, in support of a search warrant for the premises known to be Gayle's apartment (the "Apartment"). Judge Salas issued the requested warrant (the "Warrant") that same day. At the time, Agent Herbst had been a Special Agent with ICE for approximately three years and had participated in numerous investigations of unlawful drug

distribution, including the execution of numerous search warrants. Through his training, education, and experience, Agent Herbst had become familiar with, among other things, the manner in which illegal drugs are imported and distributed.

The Warrant Affidavit sought authorization to search the Apartment on the basis of a number of factors. First, the Warrant Affidavit asserted that the Indictment established the existence of probable cause to believe that Gayle was engaged in narcotics trafficking activities. The Warrant Affidavit further asserted that, on the basis of information obtained from a reliable cooperating witness ("CW-1") and consensually-recorded meetings between CW-1 and Gayle, there was probable cause to believe that Gayle used the Apartment to store narcotics-trafficking records, including detailed ledgers of drug transactions. In particular, the Warrant Affidavit alleged that when a shipment of narcotics arrived from Jamaica to Newark International Airport, it was Gayle's standard practice to record in a ledger the date and amount of the shipment, as well as the amount owed to him for removing the narcotics from the airplane; that CW-1 had seen the ledger on several occasions at the Apartment; that the ledger consisted of

several sheets of loose-leaf paper kept in a small notebook; that the last time CW-1 saw Gayle with the ledger was on or about July 28, 2008; and that each time CW-1 and Gayle met at the Apartment, Gayle provided CW-1 with a list of flights that could be used to transport narcotics in the future.

The Warrant Affidavit also asserted that there was probable cause to believe that the Apartment would contain evidence of Gayle's involvement in narcotics trafficking activities on the basis of Agent Herbst's training and experience that individuals who are engaged in narcotics trafficking activities often maintain, among other things, records and other evidence of their involvement in these activities at their residences.

On or about February 18, 2009, ICE agents searched the Apartment. Among the items seized from the Apartment during the execution of the search warrant were two 2008 calendar books, and a black spiral notebook.

**III. PROBABLE CAUSE EXISTED FOR THE WARRANT**

Gayle seeks to controvert the Warrant and to suppress evidence seized during the search of the Apartment as fruit of an unlawful search. Gayle challenges the lawfulness of the Warrant on the grounds that the information establishing probable cause to believe that evidence of criminal activity would be found in the Apartment was stale. Gayle also asserts the alternative argument that alleged omissions from the Warrant Affidavit constitute an intentional or reckless disregard of the truth and are sufficiently material so as to require a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978).

### A. Grounds for Probable Cause Were Not Stale

When considering whether to grant an application for a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 236 (1983). Similarly, establishing a sufficient nexus between the alleged criminal activities and the premises to be searched

7

"does not require direct evidence and may be based on reasonable inference from the facts presented based on common sense and experience." United States v. Singh, 390 F.3d 168, 182 (2d Cir. 2004) (internal quotation marks and citations omitted). Therefore, the evidence presented to the issuing judge "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." Gates, 462 U.S. at 232 (quoting United States v. Cortez, 449 U.S. 411, 418 (1981)).

A court reviewing a magistrate judge's probable cause determination should uphold the issuing judge's determination so long as there exists "a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." Gates, 462 U.S. at 236 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)) (ellipses and brackets in original). The information considered by the magistrate judge should take into account the "totality of the circumstances" and entail an "assessment of probabilities in particular factual contexts." Id. at 232-33. A magistrate judge's "finding of probable cause is itself a substantial factor tending to uphold the validity of [the] warrant" and "doubts should be resolved in favor

8

of upholding the warrant." United States v. Travisano, 724 F.2d 341, 345 (2d Cir. 1983).

In instances where evidence is seized pursuant to a warrant for which probable cause was lacking, the evidence is nevertheless admissible upon a showing that the officers who executed the warrant did so in "objective good faith." United States v. Leon, 468 U.S. 897, 920 (1984). Ascertaining whether the agents acted in good faith requires an assessment of "whether a reasonable well trained officer would have known that the search was illegal despite the magistrate's authorization." Id. at 923 n.23. Therefore, if the reviewing court finds that the officers' reliance on the warrant was objectively reasonable, suppression is not warranted. See, e.g., United States v. Roberts, 852 F.2d 671, 675 (2d Cir. 1988). In contrast, the good faith exception is inapplicable where (1) the issuing magistrate has been knowingly misled; (2) the issuing magistrate wholly abandoned his or her judicial role; (3) the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; or (4) where the warrant is so facially deficient that reliance upon it is unreasonable. Leon, 468 U.S. at 923;

see also United States v. Mooer, 968 F.2d 216, 222 (2d Cir. 1992).

Generally, "the facts in an affidavit supporting a search warrant must be sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search and not simply as of some time in the past." United States v. Wagner, 989 F.2d 69, 75 (2d Cir. 1993). "[T]he principal factors in assessing whether or not the supporting facts have become stale are the age of those facts and the nature of the conduct alleged to have violated the law." United States v. Diaz, 176 F.3d 52, 109 (2d Cir. 1999) (quoting United States v. Gallo, 863 F.2d 185, 192 (2d Cir. 1988)) (internal quotation marks omitted). Determining factors in the staleness analysis include "the currency and specificity of the information, the reliability of the sources of information, the nature of the alleged criminal activity, the duration of that activity in the location in question and the nature of the evidence being sought." United States v. Paul, 692 F. Supp. 186, 191 (S.D.N.Y. 1988) (citing United States v. McGrath, 622 F.2d 36, 42 (2d Cir. 1980)). Where the criminal activity is suspected to be ongoing, "the passage

10

of time between the last described act and the presentation of the application becomes less significant." Gallo, 863 F.2d at 192 (internal quotation marks and citations omitted). Narcotic conspiracies, in particular, represent "the very paradigm of continuing enterprises for which the courts have relaxed the temporal requirements of non-staleness." United States v. Rowell, 903 F.2d 899, 903 (2d Cir. 1990) (internal quotation marks and citations omitted). Consequently, courts in the Second Circuit have found probable cause to remain current in narcotics cases even when the gap between the most recent information and the search was substantial. See, e.g., United States v. Singh, 390 F.3d 168, 181-82 (2d Cir. 2004) (no staleness from lapse of twenty months between information in affidavit and search warrant application); Rowell, 903 F.2d at 903 (no staleness from lapse of eighteen months between informant's statement and wiretap); United States v. Beltempto, 675 F.2d 472, 476-79 (2d Cir. 1982) (no staleness from 2 month delay); United States v. Enoa, No. 93 Cr. 285 (KTD), 1993 WL 404154, at *2 (S.D.N.Y. Oct. 7, 1993) (no staleness from 4 month delay).

The continuous nature of the narcotics conspiracy charged in the Indictment and the facts set forth in the

11

Warrant Affidavit establish that the February 2009 search was not impaired by staleness. The Warrant Affidavit described a narcotics conspiracy, of which Gayle was a critical member, that began in 2003 and continued through 2008. The Indictment alleged meetings between Gayle and a co-conspirator in Brooklyn, New York, on or about February 2, 2008, and discussed the shipment of approximately 5 kilograms of cocaine from Jamaica. In addition, the Warrant Affidavit alleged that CW-1 saw a notebook containing a ledger, in which Gayle recorded the dates and amounts of narcotics shipments arriving from Jamaica to Newark International Airport and the amounts owed to him for removing the narcotics from airplanes, when he met with Gayle at the Apartment on or about July 28, 2008, seven months prior to the application of the search warrant.

Consideration of the "nature of the evidence being sought" also supports the magistrate's finding of probable cause. See Paul, 692 F. Supp. at 191. The documents, ledgers, and other records relating to or memorializing narcotics trafficking referenced by the Warrant Affidavit were not temporary in nature or likely to dissipate over time. Indeed, "[u]nlike drugs or cash, records of past activity are likely to be maintained over

12

Case 1:08-cr-01244-RWS   Document 66   Filed 12/08/09   Page 13 of 18

time, especially if the activity involved" substantial dollar amounts over several years. United States v. LaMorte, 744 F. Supp. 573, 576 (S.D.N.Y. 1990).

Moreover, Agent Herbst set forth his opinion, based upon his training and experience in numerous narcotics investigations, that drug traffickers often keep records, ledgers, address books, photographs, and other documents related to their drug trafficking in their homes. As the Second Circuit has recognized, a Government agent's expert opinion "is an important factor to be considered by the judge when making a probable cause determination." United States v. Benevento, 836 F.2d 60, 71 (2d Cir. 1987), abrogated on other grounds by United States v. Indelicato, 865 F.2d 1370 (2d Cir. 1989) (internal quotation marks omitted). Judge Salas was entitled to rely on Agent Herbst's opinion, as well as the commonsense notion that an individual engaged in a conspiracy may have evidence of that conspiracy, including ledgers, located in his or her residence in determining that probable cause existed for the Warrant. See United States v. Fama, 758 F.2d 834, 838 (2d Cir. 1985) (approving courts' reliance on agent's expert opinion that narcotics traffickers "frequently maintain at their homes large amounts of cash, drugs,

books, ledgers and other documents evidencing their criminal activities").

Defendant argues that recordings of conversations between CW-1 and himself demonstrate that, as of February 2008, he was no longer participating in the narcotics conspiracy due to his co-conspirators' failure to pay him for his services. Rather, he only sought to obtain the money owed to him for work done prior to February 2008. As a result, Gayle argues, the present circumstances are distinguishable from the cited cases because he was no longer an active member of the conspiracy at the time of the events cited in the Warrant Affidavit, and those events therefore cannot establish the required probable cause.

To the extent Defendant sought payment for his prior contributions to the conspiracy, however, he had every reason to keep the ledger and other documentary evidence detailing his contributions to the conspiracy. As a result, Defendants' assertion that he had ceased his participation in the conspiracy a year prior to the search does not undermine Judge Salas's probable cause determination.

14

Moreover, even if Judge Salas erred in issuing the warrant, the evidence found during the search should not be suppressed where the agents conducting the search relied in "objective good faith" on the warrant. Leon, 468 U.S. at 923. Gayle has not asserted that any of the exceptions to the good faith reliance apply.

In light of the totality of the circumstances, Judge Salas's probable cause determination was reasonable.

### B. A *Franks* Hearing Is Not Required

In the alternative, Defendant seeks a Franks hearing to determine whether alleged material omissions in the Warrant Affidavit rose to the level of intentional omissions or reckless disregard for the truth. A defendant may challenge a search warrant on the basis of inaccuracies or omissions in the warrant affidavit only upon a threshold showing that the "inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth." United States v. Canfield, 212 F.3d 713, 717-18 (2d Cir. 2000) (quoting United States v. Salameh, 152 F.3d 88, 113 (2d Cir. 1998)). As the Supreme Court stated in Franks:

15

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

438 U.S. at 171; see also Rivera v. United States, 928 F.2d 592, 604 (2d Cir. 1991) (noting that "[t]he Franks standard is a high one"); United States v. Campino, 890 F.2d 588, 592 (2d Cir. 1989) (affirming trial court's denial of Franks hearing "because appellants failed to produce evidence of deliberate falsehood or recklessness in the affidavit").

In addition to making a threshold showing of deliberate falsehood or reckless disregard for the truth, the Defendant must demonstrate that the allegedly false information was "necessary to the finding of probable cause." Franks, 438 U.S. at 157. To determine if the

16

false information was material, the court puts aside the erroneous information and determine whether "there remains a residue of independent and lawful information sufficient to support probable cause." United States v. Ferguson, 758 F.2d 843, 849 (2d Cir. 1985); see also Canfield, 212 F.3d at 718. The same analysis applies where a defendant alleges that the affidavit omitted material facts. Campino, 890 F.2d at 592 (citing Ferguson, 758 F.2d at 848).

Here, Defendant has failed to make a threshold showing that any inaccuracies or omissions in the Warrant Affidavit are the result of deliberate falsehoods or reckless disregard for the truth. Nor has Defendant demonstrated that any information omitted from the Warrant Affidavit was material to Judge Salas's probable cause determination. Despite Defendant's suggestion to the contrary, nowhere does the Warrant Affidavit misleadingly state or suggest that Gayle was directly involved in the September 2, 2008 narcotics shipment which was ultimately seized by law enforcement officials at Newark International Airport. Further, even if Judge Salas had not been aware of Defendant's assertion that he had not been involved in narcotics trafficking for over one year at the time of the

17

warrant application, there remain independent bases for her probable cause finding given the nature and duration of the alleged criminal activity and the nature of the evidence sought.

Defendant's request for a <u>Franks</u> hearing is therefore denied.

**IV. CONCLUSION**

For the foregoing reasons, Gayle's motion to suppress the evidence seized during the February 18, 2009 search of his residence is denied.

It is so ordered.

New York, NY
December 7, 2009

ROBERT W. SWEET
U.S.D.J.